UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHOSEN CONSULTING LLC, d/b/a CHOSEN HEALTHCARE, INDIANA ATC JV, LLC, d/b/a HICKORY RECOVERY NETWORK, HIGHLAND RECOVERY, LLC, d/b/a HICKORY TREATMENT CENTER AT HIGHLAND, CHOSEN HIGHLAND, LLC, and HICKORY HOUSE RECOVERY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TOWN COUNCIL OF HIGHLAND, INDIANA, HIGHLAND MUNICIPAL PLAN COMMISSION, TOWN OF HIGHLAND, INDIANA, and MARK SCHOCKE,<br><br>Defendants. | Cause No. 2:24-CV-003-PPS-JEM |

## OPINION AND ORDER

The Plaintiff in this case is a collection of related companies that I will refer to simply as Chosen (unless context requires more specificity). This is the second of two related cases brought by Chosen against the Town of Highland relating to Chosen's efforts to operate a drug treatment facility in Highland. The original case was filed four years ago, and summary judgment motions in that case are fully briefed. *See generally Chosen Consulting, LLC, et al. v. Town Council of Highland, Indiana, et al.*, Cause No. 2:20-CV-246-PPS (filed June 26, 2020). One might reasonably wonder why a new case involving the same parties and an identical nucleus of facts was filed nearly four years

later. The Town of Highland has certainly wondered the same thing and has moved to dismiss the complaint, arguing that Chosen's new lawsuit violates the rule against claim splitting and is otherwise barred by the statute of limitations. [DE 13.] For the reasons explained below, a commonsense review of the complaint reveals that Chosen attempts to belatedly take a second bite of the apple, and therefore the action must be dismissed.

## The Prior Case

In the 2020 case, Chosen asserted that the Town of Highland, through its Town Council and Municipal Plan Commission, violated the Americans with Disabilities Act and Rehabilitation Act by withholding zoning approval for Chosen to transition a dual-certified facility into a sub-acute facility that would primarily provide treatment for people with substance abuse disorders. In a nutshell, Chosen claimed that in order to open the property as a sub-acute facility, it needed to obtain certification from Indiana's Family and Social Services Administration (FSSA); the FSSA required Chosen to submit a letter from the Town of Highland stating that this proposed use satisfied local zoning requirements (the "zoning-approval letter"); and the powers that be in Highland refused to issue the zoning-approval letter based on animus against drug abusers, in violation of federal law.

In an Opinion and Order entered August 1, 2022, I dismissed without prejudice Chosen's claim seeking a declaration that the property was properly zoned for its proposed use as a sub-acute facility, because Chosen had not exhausted its administrative remedies by seeking a variance or appealing the Town Council's

declination of a requested zoning-approval letter to Highland's Board of Zoning Appeals. [DE 72 at 11–17, Cause No. 2:20-CV-256-PPS.] However, I permitted Chosen to proceed on its claims under the ADA and Rehabilitation Act, because the complaint plausibly alleged that Highland discriminated on the basis of disability when it refused to produce a letter that Chosen needed to become a state certified sub-acute facility. *Id.* at 17–21.

In reaching this conclusion, I specifically credited Chosen's allegations that after it initially received a draft zoning-approval letter from Highland's legal counsel, Town Councilman Mark Schocke expressed opposition to issuing a finalized letter "based on unfounded community concern that drug addicts would be sent to the sub-acute facility and would be free to leave at will, sign themselves out, and walk the neighborhood," and that Highland's flip-flop occurred only after Schocke discussed concerns with his "family and other members of the community who were opposed." *Id.* at 20. As prefaced, Highland has moved for summary judgment on Chosen's ADA and Rehabilitation Act claims, and that motion is ripe for ruling. [*See* DE 125, Cause No. 2:20-CV-246-PPS.]

In this case, Chosen provides some additional factual allegations, but essentially details the same chain of events that led to Highland's denial of a zoning-approval letter.

3

## Background

As noted above, the facts forming the basis of the two actions are essentially identical. I previously outlined the detailed factual allegations in the 2020 case and assume familiarity with that earlier opinion. [*See* DE 72 at 3–7, Cause No. 2:20-CV-246-PPS.] To briefly recap, dating back to the 1970s, a property located in Highland was the site of Highland Nursing and Rehabilitation Center. This facility, which historically operated as a nursing home under the local zoning code, provided medical treatment to patients pursuant to a dual-certification as a nursing facility and skilled nursing facility. In 2019, Plaintiffs (Chosen Consulting LLC, Chosen Highland, LLC, Hickory House Recovery, LLC, Highland Recovery LLC, and Indiana ATC JV LLC) tried to transition the property to primarily serve patients suffering from addiction-related physical or mental ailments, including substance abuse disorders. As part of this transition, Chosen gave up the facility's dual-certification. To re-open as a drug treatment facility, Chosen must obtain a new certification as a sub-acute facility from the FSSA.

In its new complaint, Chosen provides more detailed factual allegations about its discussions with Highland zoning authorities and the process that allegedly took place on Highland's end. [DE 1.] When it started transitioning the facility, in July 2019, Chosen's representatives met with Ken Mika (the Town's building commissioner and zoning administrator) and Mark Herak (a Town Council member). *Id.*, ¶ 21. Mika and Herak allegedly voiced support for the proposed transition. Although Mika indicated the proposed use may require a variance, he never discussed this with the Town

4

Council and did not indicate to Chosen that a variance was needed. *Id.*, ¶¶ 21–23. In October 2019, Chosen's counsel circulated a legal opinion to the Town's attorney, Rhett Tauber, detailing a legal basis for permitting the sub-acute facility to open on the property. *Id.*, ¶ 30. Tauber did not take any action on the opinion and did not issue Chosen's requested letter. *Id.*, ¶ 31.

In November 2019, new members (including Mark Schocke) were elected to the Town Council, and in January 2020, John Reed became the Town's attorney. [DE 1, ¶ 32.] Chosen had another meeting with Mika and Herak in March 2020 to discuss the zoning-approval letter; Mika reiterated that Chosen may need a use variance and recommended obtaining a legal opinion from Reed. *Id.*, ¶ 33. Chosen contacted Reed on May 11, 2020, and Reed replied the same day with a draft letter opining that the property was properly zoned as a legal nonconforming use and that the proposed use as a sub-acute facility would be permitted under Highland's zoning law. *Id.*, ¶ 34.

No final letter was ever issued and none of the Town's representatives authorized Reed to respond to Chosen's counsel. [DE 1, ¶¶ 34–35, 40.] Chosen followed up in June 2020, but did not receive a final letter. *Id.*, ¶ 36. In the background, Chosen claims that Mika, Herak, Reed, and the Town's Clerk-Treasurer, Michael Griffin, researched Highland's zoning ordinances and searched Town Council minutes to determine the original use the Town had approved for the property. *Id.*, ¶ 37. Chosen claims Schocke was aware of this research. *Id.*, ¶ 38. At some point after Chosen followed up in June, the Town Council allegedly held an executive session at which

5

they discussed the proposed use of the property and Chosen's requested letter. *Id.*, ¶ 39. Chosen later learned that Schocke opposed the proposed transition after speaking with his family and other members of the community who were opposed based on "unfounded . . . concern that these residents would be able to sign themselves out and come and go in the neighborhood as they pleased." *Id.*, ¶¶ 42–43.

None of these allegations in the recent complaint are new. They may be a tad bit more detailed, but they lay out the same zoning-approval process Chosen complained about in the 2020 case. The same claims about Schocke's opposition to issuance of a zoning-approval letter in his capacity as the President of the Town Council—and his allegedly discriminatory basis for opposing it—persuaded me to allow Chosen to proceed on its ADA and Rehabilitation Act claims against Highland, the Town Council, and the Municipal Plan Commission.

The twist is Chosen now claims that it later learned that Defendants made an "official decision" not to issue the requested zoning-approval letter based on animus toward individuals with substance abuse disorder. [DE 1, ¶¶ 44–45.] This decision was never "communicated" directly to Chosen. *Id.*, ¶ 45. One is left to ask, what changed? In opposing Defendants' motion to dismiss, Chosen tells me its allegation that Defendants made an "official decision" to deny issuance of the letter back in 2020 is based on information it first learned while deposing Herak and Mika in the related action. [DE 21 at 5–6; *see* DE 21-1, ¶¶ 5–6; DE 21-1 at 5–17.] Herak testified that he had seen the draft letter and understood that a final letter was going to be issued; but after the Town

6

Council held an executive session, no final letter was issued. [DE 21-1 at 11–13.] He understood Schocke had commented on the plan to issue a final letter and that Schocke opposed "turn[ing] the nursing home into a drug rehab center." *Id.* at 13. Mika testified that Schocke was opposed to Reed's draft legal opinion. *Id.* at 16–17. The cited deposition transcripts themselves are not dispositive of the issues before me, which can be resolved on the face of the pleadings; I include these details only to put Chosen's arguments in context.

## Discussion

Chosen asserts two claims under 42 U.S.C. § 1983 against the Town of Highland, its Municipal Plan Commission, and its Town Council for deprivations of Fourteenth Amendment rights to equal protection and procedural due process, and tacks on another § 1983 claim against Mark Schocke in his capacity as President of the Town Council. [DE 1 at 8–13.]

### **Legal Standard**

Defendants' arguments for dismissal for failure to state a claim are based on claim splitting and the applicable statute of limitations, which are affirmative defenses. Courts have explained that such arguments are typically raised in a Rule 12(c) motion for judgment on the pleadings, as opposed to a Rule 12(b)(6) motion to dismiss. *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*, 392 F. Supp. 3d 965, 967 (S.D. Ind. 2019), *aff'd*, 953 F.3d 998 (7th Cir. 2020) (citing *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010)); *Jones v. PNC Bank, N.A.*,

7

630 F. Supp. 3d 959, 963 & n.2 (N.D. Ill. 2022) (citing *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). But where, as here, I have all the information "needed in order to be able to rule on the defense," there is really no difference, analytically speaking. *Carr*, 591 F.3d at 913. *See also Brooks*, 578 F.3d at 579 (where argument relies upon allegations of the complaint itself, then "the practical effect is the same"). So I will take up the substance of the motions and apply the oft-repeated standard for motions to dismiss under Rule 12(b)(6).[1]

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires the plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

---

[1] In any case, courts analyze Rule 12(c) motions under the same standards governing motions to dismiss under Rule 12(b)(6), accepting as true all facts alleged in the complaint and granting the plaintiff the benefit of all reasonable inferences that can be drawn from the relevant factual allegations. *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015).

While I must accept the complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor, *see Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021), "sheer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden, *Taha*, 947 F.3d at 469.

### Claim Splitting

Claim splitting, like claim preclusion, is a "component" of the defense of res judicata. *Rexing Quality Eggs*, 392 F. Supp. 3d at 967 (quoting *Alvear-Velez v. Mukasey*, 540 F.3d 672, 678 (7th Cir. 2008)). "The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Elmhurst Lincon-Mercury, Inc. Emps. 401(k) Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659, 665 (N.D. Ill. 2016) (quoting *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015)). The rule recognizes that plaintiffs "have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)).

Claim splitting bars issues that were actually decided in a prior lawsuit, as well as all issues which could have been raised in that action. *See Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015); *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011); *Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997). The defense applies if "(1) the second claim is based on the same transaction or occurrence as the first claim

9

and there is (2) an identity of parties or their privies." *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 2016 WL 67297, at *2 (S.D. Ind. 2016), *aff'd*, 850 F.3d 866 (7th Cir. 2017).

The circuit has noted that Indiana has adopted the same principles: parties are prohibited from "split[ting] a cause of action, pursuing it in piecemeal fashion and subjecting a defendant to needless multiple suits.' Instead, [m]ultiple legal theories supporting relief on account of one transaction must be litigated at one go." *Telamon*, 850 F.3d at 873 (internal quotations omitted).

The main difference between traditional claim preclusion and claim splitting is that the latter applies before either case reaches a final judgment on the merits. *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021). In other words, the requirements for claim splitting "are not quite as stringent" as those for the defense of claim preclusion. *Id.* A good way to think about it is that "res judicata focuses on protecting the finality of judgments," whereas claim splitting "is more concerned with the district court's comprehensive management of its docket." *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). While dismissal is not required under the claim-splitting doctrine, I am afforded wide discretion to dismiss a duplicative lawsuit on claim-splitting grounds. *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 688, 697 (7th Cir. 2022) ("We have recognized one important practical difference between res judicata and claim splitting: claim splitting allows a trial court to exercise discretion, while res judicata does not.")

Defendants tell me that the allegations in this new lawsuit are "identical" to those in the 2020 case. [DE 14 at 6.] Chosen responds that its case falls within an

10

exception to the claim-splitting doctrine, because it could not have discovered Defendants made an official decision "under color of law" to deny issuance of the zoning-approval letter until it deposed Herak and Mika in January 2023. [DE 21 at 10–20.] In my prior Opinion and Order, I characterized Chosen's gripe as one of being "stuck in a bureaucratic snarl," because "Highland refuses to provide" a zoning-approval letter, which is the last hurdle Chosen must clear to obtain state certification as a sub-acute facility. [DE 72 at 2, Cause No. 2:20-CV-426-PPS.] Chosen attempts to distinguish a "bureaucratic snarl" from an official action taken under color of state law that forms a plausible basis for a § 1983 claim, arguing that it could not have known that Defendants' "actions went beyond mere delay in issuing a final draft of the Letter" until deposing Herak and Mika in January 2023. [DE 21 at 6.] The distinction that Chosen is trying to create between what I colloquially called a "bureaucratic snarl" and state action for § 1983 purposes is lost on me.

Frankly, it is obvious that Chosen knew it was dealing with a state actor operating under color of law. For starters, the allegations in its original lawsuit reflect that it was aware the Town Council, acting under color of state law, had decided not to issue the requested zoning-approval letter as early as June 2020. The original complaint alleged that Chosen was informed that "at least one member of the Town Council affirmatively opposed issuance of the letter" and that this opposition "caused the member to *halt further consideration by the Town Council of the requested letter*." [DE 1, ¶ 28 (emphasis added), Cause No. 2:20-CV-246-PPS.] The amended complaint made the

11

same claim and further alleged that Defendants made an "unjustified, unlawful, and belated decision to oppose [Chosen's] lawful use of the Property as a sub-acute facility," Chosen had been "denied access to the Property for a lawful and proper use," and this "denial" prevented Chosen from "providing much-needed services in the Town of Highland." [DE 22, ¶¶ 30–31, Cause No. 2:20-CV-246-PPS.]

Defendants also note that Chosen's filings in the 2020 case reflect that Chosen knew full well that Schocke was involved in the decision to "halt . . . discussions or . . . issuance" of the zoning-approval letter [DE 27-1 at 4 (Chosen's Initial Disclosures)], and that emails between Chosen's representatives and Herak in June 2020 reflected Defendants' "motivation in refusing to issue the letter was based on discriminatory animus." [DE 63 at 8, Cause No. 2:20-CV-246-PPS].

To be sure, Chosen includes more detailed factual allegations about the timeline between May 2020, when its representatives reached out to Reed requesting a legal opinion on the proposed use of the property, and June 2020, when Chosen was allegedly informed of Schocke's opposition to issuance of a zoning-approval letter and the Town Council allegedly made an "official decision" to withhold issuance of the requested letter. And it adds Schocke as a defendant in this case. But the gravamen of this case is identical to the one previously filed: by June 2020, Chosen knew that Schocke, acting as President of the Town Council, affirmatively opposed the request for a zoning-approval letter and the Town Council did not issue the letter. To the extent there were other avenues to obtain a "final" decision on the proposed use from the

BZA, as opposed to the Town Council, Chosen did not circle back with the zoning authorities – all while continuing to pursue discrimination claims predicated upon the Town's refusal to issue the zoning-approval letter. Two and a half years passed before the depositions in the 2020 case, during which time no zoning approval letter was issued. To which I ask, what did Chosen think Defendants had done in the meantime? Continued to consider the request? Forgot about it? There is a commonsense answer: the request was officially denied, insofar as the letter never issued.

Chosen asserts that it "was simply not aware that Defendants engaged in conduct *under color of law* for purposes of a 1983 claim by making an *official* decision or determination to refuse to issue the letter." [DE 21 at 17 (emphasis supplied).] For all it knew, "Defendants were simply slow to move and had not put the zoning letter on the bureaucratic 'front burner.'" *Id.* at 11. The assertion that Chosen did not know by June 2020 that Schocke, as President of the Town Council, was acting under color of state law, and that the Town Council's decision not to issue the zoning-approval letter was an "official" action (or inaction) taken under color of state law, is too hard to swallow. The facts alleged in both cases are essentially identical, albeit newly packaged as claims for deprivation of Plaintiffs' constitutional rights.

As I noted in another case, the Supreme Court has defined the phrase "acting under color of law" as "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law[.]" *Thompson v. Zirkle*, 2007 WL 3046667, at *1 (N.D. Ind. Oct. 17, 2007) (quoting *Monroe v.*

13

*Pape*, 365 U.S. 167, 184 (1961)). Indiana law reflects that an "official action" encompasses receiving information, deliberating, making recommendations, establishing policy, making decisions, or taking a final action, Ind. Code § 5-14-1.5-2(d), and a "final action" means "a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order," *id.* § 5-14-1.5-2(g). In other words, the whole process of reviewing the request for a zoning-approval letter, which the Town Council members (including Schocke) undertook in their capacities as Town officials, encompassed "official action" under state law, even if Chosen did not receive a formal letter denying its request.

In sum, I will exercise my discretion and dismiss this action under the claim-splitting doctrine, because a commonsense review of Chosen's claims reflects that the suit arises from the same transaction or events underlying the 2020 lawsuit and Chosen simply attempts to remix its legal theory. *Carr*, 591 F.3d at 913–14 ("You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory. That is called 'claim splitting,' and is barred by the doctrine of res judicata."). In light of my conclusion that the case is barred under the claim-splitting doctrine, I will not proceed to consider Defendants' arguments based on the applicable statute of limitations.

ACCORDINGLY:

Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [DE 13] is **GRANTED**. The Clerk is directed to close the case.

14

**SO ORDERED**.

ENTERED: May 20, 2024.

      /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT